# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

EDWARD HAMEL,
  Appellant,

  v.

DEPARTMENT OF HOMELAND
  SECURITY,
  Agency.

DOCKET NUMBER
DE-0752-15-0039-I-2

DATE: January 26, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jeffrey H. Jacobson, Esquire, Tucson, Arizona, for the appellant.

John B. Barkley, Esquire, Phoenix, Arizona, for the agency.

Jaime Diaz, El Paso, Texas, for the agency.

Charlotte Schmitt Marquez, New Orleans, Louisiana, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt recused himself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**FINAL ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to expand upon the administrative judge's analysis as to why the appellant is not entitled to corrective action in connection with his claim of whistleblower reprisal and to correct the penalty analysis, we AFFIRM the initial decision.

¶2 The instant decision involves the appellant's removal appeal.[2] *Hamel v. Department of Homeland Security*, MSPB Docket No. DE-0752-15-0039-I-1, Initial Appeal File (IAF); *Hamel v. Department of Homeland Security*, MSPB

---

[2] The appellant also has an individual right of action appeal pending in which he alleged unlawful reprisal. *See Hamel v. Department of Homeland Security*, MSPB Docket No. DE-1221-16-0046-W-1. Although that appeal involves many of the same underlying facts as his removal appeal, the two appeals have been and continue to be adjudicated separately. Joining them would not expedite case processing. *See* 5 C.F.R. § 1201.36(b) (explaining that joinder is appropriate if doing so would expedite case processing and not adversely affect the interests of the parties).

Docket No. DE-0752-15-0039-I-2, Appeal File (AF-2).[3] There is no dispute regarding the following facts set forth in the initial decision.

¶3 The appellant most recently held a GS-14 Resident Agent in Charge (Supervisory Criminal Investigator) position with the agency's U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), in Phoenix. AF-2, Tab 47, Initial Decision (ID) at 2. In 2009, he was involved in an investigation with the Bureau of Alcohol, Tobacco, and Firearms (ATF) known as Operation Fast & Furious. ID at 36. Based on his knowledge of the investigation, the appellant disclosed that the ATF's tactics included allowing weapons purchased under suspicious circumstances to cross the United States' border into Mexico, contrary to the agency's mission and in violation of law. *Id.* Later, in 2010, a Border Patrol Officer was murdered and weapons associated with Fast & Furious were found at the crime scene. *Id.* Between January 2012 and July 2013, Department of Homeland Security (DHS) and Department of Justice (DOJ) Offices of Inspectors General (OIG), DHS management, and Congressional staff interviewed the appellant about Fast & Furious, and he reportedly detailed his concerns with the investigation as well as his disagreement with particular officials' characterization of their involvement. ID at 37.

¶4 Meanwhile, in March 2013, the agency received a detailed but anonymous complaint about the appellant's conduct. IAF, Tab 10 at 40. After a lengthy investigation about that complaint and other matters that arose from it, the agency proposed his removal. *Id.* at 4-13. That May 2014 proposal charged the appellant with (1) conduct unbecoming a supervisor, (2) failure to be forthright in reporting damage to a Government-owned vehicle, and (3) lack of candor and/or failure to

---

[3] The administrative judge dismissed the removal appeal without prejudice to accommodate the parties' discovery needs. She subsequently refiled the appeal, resulting in the two docket numbers associated with the one appeal. IAF, Tab 15; AF-2, Tab 1.

cooperate with Office of Professional Responsibility (OPR) investigators.  *Id.*  The deciding official removed him for the same reasons.  IAF, Tab 8 at 20-36.

¶5        After holding the requested hearing in this removal appeal, the administrative judge sustained the action.  ID at 49.  For charge (1), she found that the agency proved all 10 of the underlying specifications.  ID at 7-12.  For charge (2), the administrative judge found that the agency did not meet its burden.[4]  ID at 12-15.  For charge (3), she found that the agency proved specifications 4 and 6, but failed to prove specifications 1-3, 5, or 7.  ID at 15-32.  Although the appellant presented allegations of a due process violation and harmful procedural error, the administrative judge found that he failed to prove either.  ID at 32-35.  Concerning his retaliation affirmative defense, the administrative judge found that the appellant presented a prima facie case of reprisal, ID at 35-41, but the agency met its burden of proving that it would have taken the same action absent his protected activity, ID at 41-44.  Finally, the administrative judge found that the agency proved nexus, and removal was the maximum reasonable penalty for the specifications and charges sustained.  ID at 44-48.

¶6        The appellant has filed a petition for review.  *Hamel v. Department of Homeland Security*, MSPB Docket No. DE-0752-15-0039-I-2, Petition for Review (PFR) File, Tab 1.  The agency has filed a response.[5]  PFR File, Tab 4.

---

[4] On review, neither party disputes the administrative judge's decision not to sustain charge (2).  Therefore, we find it unnecessary to address this charge further.

[5] In a September 6, 2017 notice, the Board explained that the agency could file its response on or before September 30, 2017.  PFR File, Tab 2.  The agency failed to meet that deadline.  Instead, on October 2, 2017, the agency submitted both its response and a request for an extension.  PFR File, Tabs 3-4.  Agency's counsel declared, under penalty of perjury, that he had been assisting in a prolonged family medical emergency throughout the agency's response period.  PFR File, Tab 3 at 3-4.  Agency's counsel further declared that the appellant's counsel had no objection to the extension.  *Id.*  Under these limited circumstances and absent any objection from the appellant, we have considered the agency's untimely response.  *See* 5 C.F.R. § 1201.114(g) (recognizing

<u>The administrative judge properly sustained charge (1), conduct unbecoming a supervisor.</u>

¶7    For charge (1), conduct unbecoming a supervisor, the agency's removal action included 10 specifications concerning various matters occurring between 2010 and 2012. ID at 7-12; IAF, Tab 10 at 6-8. While we need not recount all of the alleged behavior, we note examples such as the appellant "rubbing [his] crotch area" against a subordinate from behind, telling subordinates that he would "skull fuck" them, asking subordinates "who wants to give me a blow job," saying "come suck my cock" to them, and pulling his weapon unnecessarily in response to agents asking questions. IAF, Tab 10 at 6-8.

¶8    Based on the appellant's stipulations, the administrative judge found that the agency proved all 10 specifications and the charge. ID at 7-12; AF-2, Tabs 37, 39. The appellant does not dispute that finding on review.

<u>The administrative judge properly sustained charge (3), lack of candor and/or failure to cooperate with OPR investigators.</u>

¶9    The appellant does dispute the administrative judge's findings concerning charge (3). PFR File, Tab 1 at 7-18. He generally argues that the administrative judge erred by affirming specifications 4 and 6 of that charge using the same rationale that she used to reject specifications 1, 2, 3, 5, and 7. *Id.* at 8. We are not persuaded. Without considering whether the administrative judge properly rejected the remaining specifications, which neither party challenges on review, we find that she properly sustained specifications 4 and 6.

¶10    Although the agency labeled charge (3) "lack of candor and/or failure to cooperate with OPR investigators," the administrative judge determined that the latter portion merged into the former. *See Gunn v. U.S. Postal Service*, [63 M.S.P.R. 513](#), 516-17 (1994) (finding no error in an administrative judge's decision to merge a charge of unacceptable conduct into charges of falsification

_____

that the Board will excuse a late filing on review if a party shows good cause for the delay).

and providing false information in an agency investigation because the agency did not accuse the appellant of any additional specific misconduct under the unacceptable conduct charge); ID at 15-16. Accordingly, she found that the agency's burden was to prove that the appellant exhibited a lack of candor by knowingly providing incorrect or incomplete information. ID at 16 (citing *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016)). The appellant has not challenged the administrative judge's findings in this regard.

¶11 The administrative judge next recognized that each specification underlying this charge was based on the appellant's interview by a particular OPR investigator. ID at 16. The appellant alleged that this individual harbored animosity toward him because of prior conflict and that impacted his interview. *Id.* The administrative judge agreed, based on various evidence and witness testimony. ID at 16-17. Therefore, the administrative judge indicated that she considered those circumstances while determining whether the appellant had actually exhibited a lack of candor. ID at 17. For example, she did not sustain one of the specifications because she found that the OPR investigator's abrupt line of questioning prevented the appellant from providing a complete answer. ID at 18-19.

¶12 The first specification the administrative judge did sustain was specification 4. ID at 23-25. According to that specification, the OPR investigator asked the appellant if he walked into an agent's cubicle and "act[ed] like or actually unzip[ped] [his] zipper," to which the appellant responded, "I would describe the gesture more as adjusting or checking the zipper as opposed to . . . mimicking." IAF, Tab 10 at 9.

¶13 In connection with the charge of conduct unbecoming a supervisor, the appellant stipulated that he approached three different subordinate agents from behind on separate occasions, unzipped his pants, and when each agent turned around in response to the noise of the appellant's zipper going down, he laughed

and walked away. *Id.* at 6; AF-2, Tabs 37, 39. As the administrative judge recognized, separate from the appellant's stipulation, the record includes evidence documenting employees either observing or being subjected to this behavior. ID at 24; IAF, Tab 10 at 17, 19-20, 64, 303-04, Tab 11 at 303, 474-76, Tab 12 at 74-76.

¶14    When an underlying misconduct charge has been proven, a lack of candor charge also must be sustained based on the appellant's knowing failure to respond truthfully or completely when questioned about matters relating to the proven misconduct. *Social Security Administration v. Steverson*, 111 M.S.P.R. 649, ¶¶ 12-13 (2009), *aff'd per curiam*, 383 F. App'x 939 (Fed. Cir. 2010) (Table); *see Fargnoli*, 123 M.S.P.R. 330, ¶ 17 (discussing the requirement to prove intent in connection with a lack of candor charge). On review, even though the appellant has admitted the underlying conduct, he argues that the administrative judge should have interpreted his response to questioning about that conduct not as a lack of candor, but as an attempt to qualify his answers in the face of hostile questioning. PFR File, Tab 1 at 9-13. We disagree.

¶15    After reviewing the associated transcript for further context, it is evident that the appellant was not merely attempting to provide a meaningful explanation. IAF, Tab 11 at 40-44. Instead, he knowingly provided inaccurate or incomplete information. *Id.* Rather than acknowledge that his zipper behavior was an inappropriate joke or antic that he had engaged in numerous times, the appellant falsely suggested that he innocuously checked his zipper, "the same way as we all check our zipper." *Id.*; *see Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002) (recognizing that lack of candor necessarily involves an element of deception and "may involve a failure to disclose something that . . . should have been disclosed . . . to make the given statement accurate and complete").

¶16    The appellant separately argues that the administrative judge failed to recognize that his response to this line of questioning was specific to a period in

which he was a Border Enforcement Security Taskforce (BEST) Group Supervisor. PFR File, Tab 1 at 12. This argument is unavailing. The appellant stipulated that he engaged in the conduct at issue while a BEST Group Supervisor. IAF, Tab 10 at 6; AF-2, Tabs 37, 39. His statement to the OPR investigator should have encompassed this period, as the OPR investigator asked the appellant if he "ever" engaged in the conduct regarding his zipper. IAF, Tab 11 at 40-44. Therefore, we agree with the administrative judge that the agency proved specification 4.

¶17    The second specification the administrative judge sustained was specification 6. ID at 28-30. According to that specification, the OPR investigator asked the appellant if he ever referred to a particular Special Agent as "Donny," because that name reminded him of a mentally challenged childhood classmate, to which the appellant responded by denying that he came up with the nickname and indicating that he did not recall ever specifically referring to the individual as "Donny." IAF, Tab 10 at 10.

¶18    In connection with the charge of conduct unbecoming a supervisor, the appellant stipulated that he gave or condoned the use of nicknames for his subordinates, including referring to an agent "as 'Bobby Boucher or Donny' because he reminded [the appellant] of a childhood classmate who was slow and challenged." IAF, Tab 10 at 6-7; AF-2, Tabs 37, 39. In addition to the appellant's stipulations concerning this nickname and its origin, the record includes other supportive evidence. *E.g.*, IAF, Tab 10 at 19-20, Tab 12 at 39. Most notably, the record includes an investigatory report in which the agent at issue explained the nickname, consistent with the appellant's stipulations. IAF, Tab 10 at 19-20.

¶19    On review, the appellant argues that the administrative judge failed to adequately account for the fact that the agent at issue harbored personal animus towards him. PFR File, Tab 1 at 14-15. The appellant further suggests, as he did in response to his proposed removal, that the nickname actually stemmed from a

misspelling on the agent's nameplate, rather than originating from the appellant's memory of a mentally challenged child. *Id.* at 17; IAF, Tab 8 at 93. These arguments are unpersuasive in the face of the appellant's stipulations.

¶20 The appellant separately suggests that he reasonably could have forgotten about the nickname by the time of the interview in which he was asked about it. PFR File, Tab 1 at 15. However, the administrative judge made credibility findings to the contrary, finding it implausible that the appellant would forget the origin of the nickname or the existence of the real Donny. ID at 29-30 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987)). We find no basis for reaching a different conclusion. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1299-1301 (Fed. Cir. 2002) (explaining the deference the Board must give to an administrative judge's credibility findings).

The agency proved that it would have removed the appellant in the absence of his protected whistleblowing.

¶21 The appellant's next argument on review concerns his retaliation affirmative defense. PFR File, Tab 1 at 20-22. He argues that the administrative judge erred by finding that the agency met its burden of proving that it would have taken the same action, notwithstanding his protected whistleblowing activity. *Id.* We disagree, but modify the initial decision to address this argument and expand upon the administrative judge's findings.

¶22 Under the Whistleblower Protection Enhancement Act of 2012, to prevail on a prohibited personnel practice affirmative defense in a chapter 75 appeal that independently could form the basis of an individual right of action (IRA) appeal, once the agency proves its adverse action by a preponderance of the evidence, the appellant must demonstrate by preponderant evidence that he made a protected disclosure or engaged in protected activity and that the disclosure or activity was a contributing factor in the adverse action. 5 U.S.C. § 1221(e)(1), (i); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013). If an appellant meets that burden,

the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosure or activity. 5 U.S.C. § 1221(e)(2); *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 24 (2014). In determining whether an agency has met this heightened burden, the Board will consider all relevant factors, including the following *Carr* factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who do not engage in protected whistleblowing activity, but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

¶23    Here, the administrative judge found that the appellant met his burden. ID at 35-41. First, she found that the appellant's disclosures about the danger and legality of the Fast & Furious operation were protected by 5 U.S.C. § 2302(b)(8). ID at 36-38. She also found that the appellant's disclosures to and cooperation with the DOJ and DHS OIG were protected by section 2302(b)(9)(C). ID at 37-38.

¶24    Next, based on the knowledge/timing test, the administrative judge found that the appellant's protected activity was a contributing factor in his proposed removal. ID at 38-41; *see Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶¶ 10-11 (2003) (recognizing that an appellant may demonstrate that his disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action). She found that the knowledge prong was satisfied because the entire agency had actual or constructive

knowledge of the appellant's protected activity after it was revealed in an OIG report on the Fast & Furious operation. ID at 38-41. She found that the timing prong was satisfied because the agency began its investigation into the appellant's conduct around the time of the OIG report and proposed his removal within 15 months of that report. ID at 40-41. Neither party challenges this finding on review and we decline to disturb it.

¶25    Although the administrative judge found that the appellant met his burden, she also determined that the agency proved, by clear and convincing evidence, that it would have taken the same action, notwithstanding the appellant's protected activity. ID at 41-44. First, she found that the agency's evidence in support of the appellant's removal was very strong. ID at 42. Next, she found that there was nothing to connect the Disciplinary and Adverse Action Panel (DAAP) that proposed the appellant's removal with anyone who was the subject of the appellant's disclosures. ID at 43. Further, the deciding official was altogether unaware of the appellant's role in the Fast & Furious matter, and those who were aware and had the most motive to retaliate were not involved in the appellant's removal. ID at 42-43. Lastly, she found that the agency had similarly removed several other employees who exhibited a lack of candor in responding to some type of investigation.[6] ID at 43.

---

[6] As we previously noted, the third *Carr* factor concerns any evidence that the agency takes similar actions against employees who do not engage in protected whistleblowing activity, but who are otherwise similarly situated. *See Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) (explaining that the agency's more favorable treatment of similarly situated whistleblowers is not relevant to *Carr* factor 3). In the initial decision, the administrative judge did not indicate whether the similarly situated employees she considered were non-whistleblowers. ID at 43. The evidence she cited was the agency's documentation of several other employees who were removed for conduct similar to the appellant's. AF-2, Tab 28 at 13-51. The agency's representative submitted a statement under penalty of perjury, which the appellant does not contest, indicating that these individuals were non-whistleblowers. *Id.* at 3, 9-10. A statement signed under penalty of perjury and not rebutted is competent evidence of the assertions it contains. *Coles v. U.S. Postal Service*,

¶26        On review, rather than disputing the specific findings that the administrative judge did make, the appellant argues that she ignored a key point pertaining to his reprisal claim.  PFR File, Tab 1 at 20-22.  According to the appellant, the administrative judge should have ruled on whether the anonymous complaint about his conduct was likely motivated by retaliatory animus.  *Id.* Under this theory, the appellant suggests that if it were not for his protected activity, there would have been no anonymous complaint, no OPR investigation stemming from that complaint, and no removal action stemming from that investigation.  *Id.*

¶27        The appellant is essentially arguing that he may have been subjected to retaliation by investigation.  An investigation is not per se a personnel action but may effectively fall within the definition of a personnel action, such as a significant change in duties, responsibilities, or working conditions.  *Spivey v. Department of Justice*, 2022 MSPB 24, ¶¶ 10-11 (citations omitted).  This is particularly so if an investigation is one of several actions underlying a hostile work environment.  However, the appellant has not alleged that he was subject to a hostile work environment in this case or his IRA appeal.  Separately, it is proper to consider evidence regarding an investigation if it is so closely related to a personnel action, such as the appellant's removal, that it could have been a pretext for gathering information to retaliate for whistleblowing.  *E.g.*, *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 18 n.4; *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 21 (2012).

¶28        To address the appellant's argument in this context, it is worth recounting some pertinent events that occurred during the period leading up to the anonymous complaint.  In late March 2012, one of the appellant's subordinates, identified here as subordinate A, met with the appellant's first-level supervisor, the Assistant Special Agent in Charge (ASAC), to complain that the appellant had

_____

105 M.S.P.R. 516, ¶ 12 (2007).  Therefore, we credit the agency's characterization of the comparator evidence as concerning non-whistleblowers.

engaged in behavior consistent with that which makes up the conduct unbecoming charge in this appeal.[7] IAF, Tab 10 at 66-68. For example, he complained that the appellant had propositioned him for oral sex and rubbed his crotch on subordinate A. *Id.* at 64-71. According to subordinate A, he further complained that the appellant was making veiled threats by repeatedly telling other employees to search for him on the internet to aid in the appellant's "own kind of investigation of [the subordinate]." *Id.* at 68-71.

¶29 Days after subordinate A made this complaint to the ASAC, in early April 2012, the appellant sent a memo to the ASAC, describing how subordinate A had exhibited performance deficiencies and misconduct. AF-2, Tab 21 at 29-31. In or around March 2013, subordinate A reported that he submitted similar complaints about the appellant's behavior to the "ICE [office of equal employment opportunity (EEO)] and [the] Office of Special Counsel." IAF, Tab 10 at 50-52. He reported doing so after deciding that the ASAC had not bothered to investigate, much less remedy, his prior allegations about the appellant. *Id.* at 75. The ASAC, on the other hand, indicated in a later statement that he doubted subordinate A's complaints and found them unspecific, and that subordinate A's removal was later proposed as a result of information he disclosed to the ASAC concerning subordinate A's own employment history, but the proposal was later vacated over the ASAC's apparent objections. IAF, Tab 9 at 87, Tab 10 at 47-48.

¶30 It was a different complaint, dated February 2013 and reportedly received in March 2013, that sparked the OPR investigation which resulted in the appellant's removal. IAF, Tab 10 at 15, 40. That complaint was addressed to the agency's OIG, the agency's OPR, and Congressional offices. *Id.* at 40. Though unsigned, the nature and text of the complaint strongly suggests that this complaint was written by one of the appellant's current or former male subordinates. *Id.* The

---

[7] We have omitted any reference to this individual's name to protect his privacy.

complainant described himself as a "VICTIM/SPECIAL AGENT" of the HSI office in Phoenix and a "JUNIOR AGENT" who was not including his name out of fear of reprisal. *Id.* This description is consistent with subordinate A's status as a relatively new employee, who started with the agency in January 2012. *Id.* at 42, 47, 49. The author of the anonymous complaint also described himself as a victim of the appellant's sexual harassment of male agents, which he indicated as happening in the presence of female agents. *Id.* at 40. For example, the complainant alleged that the appellant had asked him to perform oral sex on the appellant and had rubbed his crotch on the complainant. *Id.* Not only are the incidents described in the anonymous complaint similar to those previously described by subordinate A, but subordinate A also indicated, when interviewed as part of the OPR investigation, that the appellant engaged in misconduct in front of female agents. *Id.* at 52-53, 57. Elsewhere, the anonymous complaint describes the appellant as being able to get away with harassing his employees in this way because the appellant was a favorite of the appellant's first-, second-, and third-level supervisors, including the ASAC, all of whom the complaint identified by name and title. *Id.* at 40. According to the anonymous complainant, this was illustrated by the fact that this management chain had just promoted the appellant. *Id.* This allegation that the appellant was favored and protected is also similar to the subordinate A's description of the appellant to OPR as one of management's "top guys," and his expressed hesitance to report the appellant's misconduct for that reason. *Id.* at 67.

¶31    Subordinate A indicated that he was not the source of the anonymous complaint. *Id.* at 50. Nevertheless, we find it highly likely that this anonymous complaint was authored by him or some other male subordinate of the appellant's who was subjected to the appellant's inappropriate behavior.[8] That explains the

---

[8] Although this subordinate was an approved witness, AF-2, Tab 23 at 2, he did not testify at the hearing, AF-2, Speaker Sheets for Hearing. Our discussion of his reporting about the appellant instead stems from the subordinate's transcribed interview

consistency of the anonymous complaint with the numerous interviews with the appellant's employees about his behavior and the shared fears of him retaliating, as these employees believed to have happened to subordinate A. *E.g.*, IAF, Tab 10 at 16-35, 50-52, 65-71. To illustrate with an example, one other direct report of the appellant's described being subjected to the same type of "hazing" by the appellant. *Id.* at 20-21. He indicated that he feared reprisal if he complained, and nearly resigned for these reasons before ultimately transferring to escape the appellant's abuse. *Id.*

¶32      On review, the appellant has not offered any evidence or persuasive theory about someone other than an employee that had reported to him authoring the anonymous complaint. PFR File, Tab 1 at 20-22. Below, he suggested that it may have been his third-level supervisor, the Special Agent in Charge (SAC). AF-2, Tab 15 at 8-9. The appellant advanced this theory based on assertions that the SAC was a recipient of the appellant's Fast & Furious disclosures, he was the official most implicated by the disclosures, he made negative comments about the appellant in the aftermath, and he was involved in the appellant's placement on administrative leave pending removal. *Id.* at 8-9. The appellant presented this theory about the SAC authoring the anonymous complaint, despite the complaint specifically naming the SAC as an individual who favored the appellant and causing employees to hesitate in filing any complaint against him. IAF, Tab 10 at 40.

¶33      We recognize, as the appellant has, that the anonymous complaint occurred just after some select agency officials, possibly including the SAC, got a preview

---

with OPR investigators, in June 2013. IAF, Tab 10 at 45. The administrative judge found that one small portion of the subordinate's OPR testimony was not credible, regarding a specific instance of the appellant stating that he would "skull fuck" this subordinate. ID at 21. Nevertheless, regardless of the subordinate's credibility as to this one instance, we find the testimony, generally, is evidence of the identity of the anonymous complaint. Further, much of his other testimony was corroborated by numerous others.

of OIG's forthcoming Fast & Furious report. AF-2, Tab 21 at 53 (final report, dated March 22, 2013), 121 (agency's January 17, 2013 comments provided for the draft report). For that reason, it is within the realm of possibility that the SAC or someone else who was not subordinate to the appellant but was implicated by the forthcoming Fast & Furious report could have conspired against the appellant by authoring the anonymous complaint. But we find that highly improbable. In the absence of specific evidence to the contrary, we find it highly probable that the anonymous complaint about the appellant's behavior was authored by those who had intimate knowledge of that behavior, had endured that behavior, and feared reprisal for reporting that behavior.

¶34     We also find no reason to conclude that those who likely authored the anonymous complaint were motivated by the appellant's whistleblowing when they disclosed their abuse at the hands of the appellant. If they even knew of the appellant's whistleblowing, these lower-level employees do not appear to have been implicated by it. The whistleblowing occurred before some of them had even joined the agency and the whistleblowing primarily implicated two Special Agents in Charge or other "leadership" for allowing Fast & Furious to proceed over the objections of lower-level agents.[9] *E.g.*, AF-2, Tab 21 at 56, Tab 26 at 5-8.

¶35     Though not specifically argued by the appellant, we have next considered whether any of the parties that acted on the anonymous complaint were improperly motivated by the appellant's whistleblowing and using the anonymous complaint as a pretext to investigate and retaliate. *See Skarada*, 2022 MSPB 17, ¶ 18 n.4. This includes both those with OPR that decided to investigate the

---

[9] Because we do not find that the anonymous complaint by a subordinate was motivated by the appellant's whistleblowing, we need not decide whether the agency could be held responsible for the same. *See Staub v. Proctor Hospital*, 562 U.S. 411, 422 n.4 (2011) (declining to express any view as to whether an "employer would be liable if a co-worker, rather than a supervisor, committed a discriminatory act that influenced the ultimate employment decision").

complaint and then did investigate, as well as the DAAP that acted upon OPR's referral by proposing the appellant's removal. Below, the administrative judge found that OPR's own leadership initiated and controlled its investigation. ID at 43. She also found no reason to conclude that those implicated by the appellant's whistleblowing had spoken to the DAAP or that the DAAP was otherwise motivated to retaliate against the appellant. *Id.* We modify these findings to acknowledge that none of these individuals seem to be personally implicated by the appellant's whistleblowing, but they still may have harbored some institutional motive to retaliate, which the administrative judge failed to recognize. *See Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29 (discussing how agency officials as representatives of its general institutional interests may have a motive to retaliate, even if they were not directly implicated by a disclosure, such as when the disclosed wrongdoing was egregious and generated significant negative publicity). However, we have not reached a different result as to the agency's overall burden.

¶36 The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Soto*, 2022 MSPB 6, ¶ 13. To further illustrate this point, the Board has explained that it is not correct to state that an agency may "prevail" on a *Carr* factor, or that it must establish a *Carr* factor by any particular quantum of evidence. *Id.* On balance, the record contains clear and convincing evidence that the agency would have taken the same removal action in the absence of the appellant's protected whistleblowing. Agency officials had some motive to retaliate, but evidence in support of the appellant's removal action is very strong and the agency has removed several similarly situated non-whistleblowers. The appellant's suggestion that the investigation may have been a pretext for retaliating is not persuasive, particularly because we find that the investigation was the natural result of his subordinates complaining of sexual harassment or

even assault. *Cf.*, *Russell v. Department of Justice*, 76 M.S.P.R. 317, 325-28 (1997) (granting corrective action when an employee's removal was precipitated by investigations that were initiated by individuals who had just days earlier been the subject of the employee's whistleblowing and there was no evidence that these individuals referred similarly situated non-whistleblowers for investigation).

Removal is the appropriate penalty.

¶37 In an adverse action appeal such as this, when some but not all charges are sustained, the Board will carefully consider whether the sustained charges merited the penalty imposed by the agency. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 308 (1981). The Board may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated either in its final decision or in proceedings before the Board that it desires for a lesser penalty to be imposed if fewer than all of the charges are sustained. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999).

¶38 As detailed above, the administrative judge sustained charge (1) and all 10 of its underlying specifications, as well as charge (3) and 2 of its underlying specifications. ID at 7-12, 23-25, 28-30; *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (observing that when more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge). The deciding official noted that he would have demoted the appellant if the case only involved charge (1). IAF, Tab 8 at 26. He also indicated that charge (3) was the most serious charge, "tak[ing] the penalty from a demotion to a removal." *Id.* at 25. However, he did not explicitly state what penalty he would have selected under the specific circumstances before us.

¶39 The administrative judge found that, contrary to the deciding official's determination, charge (1) would support the appellant's removal, by itself. ID at 46. She also disagreed with the seriousness the deciding official attached to

charge (3). ID at 47. Therefore, the administrative judge essentially flipped the seriousness afforded to each of the charges by the deciding official, then concluded that removal was still the maximum reasonable penalty. ID at 46-48.

¶40    On review, the appellant argues that the administrative judge's penalty analysis is flawed because she substituted her judgment for that of the agency. PFR File, Tab 1 at 18-20. We agree and modify the initial decision accordingly. Nevertheless, we still find that removal is appropriate.

¶41    On the one hand, as the deciding official noted, the appellant had approximately 18 years of outstanding service without any prior discipline. IAF, Tab 8 at 26; *see Reid v. Department of the Navy*, 118 M.S.P.R. 396, ¶ 30 (2012) (finding 18 years of service with positive performance and no prior discipline was a mitigating factor). On the other hand, the appellant is held to a higher standard of honesty and integrity as a result of his law enforcement position. *See Prather v. Department of Justice*, 117 M.S.P.R. 137, ¶ 36 (2011). He also is held to a higher standard as a supervisor. *See Edwards v. U.S. Postal Service*, 116 M.S.P.R. 173, ¶ 14 (2010) Further, while the deciding official determined that the appellant's conduct unbecoming would not warrant removal, by itself, he described it as a shock to the conscience. IAF, Tab 8 at 25. He also indicated that the appellant's subsequent lack of candor is quite serious, affecting the value he could contribute to the agency. *Id.* at 25-26. We agree on both counts. *See, e.g.*, *Alberto v. Department of Veterans Affairs*, 98 M.S.P.R. 50, ¶¶ 7-12 (2004) (affirming the penalty of removal for a supervisor that exhibited a pattern of inappropriate and offensive misconduct, including sexually insulting jokes), *aff'd per curiam*, No. 05-3090, 2005 WL 1368150 (Fed. Cir. June 10, 2005); *Ludlum v. Department of Justice*, 87 M.S.P.R. 56, ¶¶ 28-29 (2000) (recognizing that an employee's lack of candor is a serious offense that strikes at the heart of the employer-employee relationship), *aff'd*, 278 F.3d 1280 (Fed. Cir. 2002). While the deciding official suggested that the appellant had shown some remorse, he also recognized that the appellant's initial position was to "hedge his

bets" before the OPR investigators. IAF, Tab 8 at 24. According to the deciding official, the appellant's responses called into question his rehabilitation potential. *Id.* at 26. Again, we agree. *See, e.g.*, *Levinsky v. Department of Justice*, 99 M.S.P.R. 574, ¶ 31 (2005) (finding that an appellant's expressions of remorse were not significantly mitigating because his responses to the allegations against him did not appear to reflect actual contrition), *aff'd*, 208 F. App'x 925 (Fed. Cir. 2006).

¶42    Even though there are significant mitigating factors and the agency failed to prove all its charges and specifications, we find that removal remains the maximum reasonable penalty. *See, e.g.*, *Dunn v. Department of the Air Force*, 96 M.S.P.R. 166, ¶¶ 12-18 (2004) (finding that removal was the appropriate penalty for conduct unbecoming and lack of candor, even though the employee had 28 years of spotless service), *aff'd per curiam*, 139 F. App'x 280 (Fed. Cir. 2005). While the appellant has correctly noted that the administrative judge's penalty analysis was flawed, and we have modified the analysis accordingly, he has failed to identify any basis for us to conclude that a lesser penalty is warranted.

¶43    Accordingly, we affirm the initial decision as modified herein.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must receive your

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.

petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:             /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.